**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EBENEZER ALLEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1959-R** |
| | ) | |
| **WARDEN, Diamondback Correctional Facility, et al.,** | ) | |
| | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Ebenezer Allen, a noncitizen[1] and Nigerian national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 4. The undersigned set an expedited briefing schedule, Doc. 6, and the Petition is at issue. For the reasons below, the undersigned recommends that the Court deny the Petition.

## I. Background

Petitioner, a citizen of Nigeria, was admitted to the United States on or about July 6, 2016, in Washington, D.C. on a B-2 tourist visa. Pet. at 15; Doc. 1-8 at 2 (Notice to Appear); Resp. at 2. He was authorized to remain in the country until January 5, 2017.

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

Doc. 1-8 at 2. On April 19, 2024, Petitioner submitted to the United States Citizenship and Immigration Service ("USCIS") a self-petition under the Violence Against Women Act ("VAWA"). Pet. at 15; Doc. 1-1 at 2-3 (Receipt for Petitioner's VAWA Self-Petition); Doc. 1-12 at 2 (USCIS Confirmation of Receipt). On June 21, 2024, USCIS determined Petitioner had established a prima facie case under VAWA. Pet. at 15; Doc. 1-2 at 2 (Petitioner's First Prima Facie Determination). On June 24, 2025, USCIS granted an extension of that positive prima facie determination through December 21, 2025, and it was extended again until March 8, 2027. Pet. at 15; Doc. 1-3 at 2 (Petitioner's Second Prima Facie Determination); Doc. 10 at 5 (Petitioner's Third Prima Facie Determination). Petitioner also alleges USCIS approved his employment authorization and advance parole through February 18, 2030. Pet. at 15.

On May 29, 2026, Richardson Police Department officers in Texas arrested Petitioner for abandoning and endangering a child with an intent to return. Resp. at 2; Doc. 8-1 at 3 (ICE Encounter Summary).[2] He entered into a plea agreement on the state charge. Doc. 1-10 at 2-7 (Petitioner's Texas State Plea Agreement). On May 29, 2026, ICE took custody of Petitioner and placed him into removal proceedings with the issuance of a Notice to Appear, charging him as removal for remaining in the United States beyond the period authorized by his admission. Pet. at 16; Doc. 1-8 at 2. His removal proceedings

[2] Respondents assert Petitioner was arrested for endangering a child *without* an intent to return. Resp. at 2. However, ICE records, Petitioner's plea agreement documents, and Petitioner's reply brief confirm he was charged with endangering a child *with* an intent to return. *See* Doc. 1-10 at 2-7; Doc, 8-1 at 3; Doc. 9-1 at 8.

remain pending. Pet. at 16.

Also on May 29, 2026, Petitioner, through former counsel, requested his immediate release from detention based on his membership in the class action in *Immigration Center for Women & Children v. Noem*, 351 F.R.D. 324 (C.D. Cal. May 20, 2026) (hereinafter *ICWC* or the ICWC PI Order). Doc. 1-11 at 2 (Email from Petitioner's former counsel). Neither party has told the Court whether ICE responded to Petitioner's request.

On July 9, 2026, Petitioner appeared in front of an Immigration Judge ("IJ") for a custody redetermination hearing, and the IJ denied bond because Petitioner "did not establish [he is] not a danger to the community." Doc. 1-9 at 2 (IJ Order denying bond); *see also* Resp. at 2 (describing Petitioner's two prior custody redetermination requests that were ultimately withdrawn).

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 14. Neither party has alleged Petitioner has been moved; nor has Petitioner filed a Notice of Change of Address.

## II. Petitioner's Claims

Petitioner asserts four counts in his Petition.[3]

- **Count I: Detention Contrary to *ICWC* Stay.** Petitioner alleges his detention is contrary to the stay issued by the Central District of California in *ICWC* and Respondents have not shown they applied the restored framework before re-detaining him. Pet. at 5, 20-21.

[3] In one place Petitioner alleges four counts, *see* Pet. at 5, while in another he alleges five counts, *see id.* at 20-24. Liberally construing the Petition, the undersigned concludes the four counts listed sufficiently encompass Petitioner's allegations.

- **Count II: Ultra Vires Detention**. Petitioner alleges his detention is unlawful considering his positive prima facie determination, pending VAWA self-petition, and no negative determination disclosed. *Id.* at 5, 21-22.

- **Count III: Violation of Due Process.** Petitioner alleges his detention without notice of exception circumstances, disclosure of the agency record, or meaningful opportunity to test whether the legal predicates for detention were satisfied is unlawful. *Id.* at 5, 23.

- **Count IV: Unlawful Detention/Failure to Follow Restored Framework**. Petitioner alleges his continued detention without demonstrated compliance with the *ICWC* stay and restored victim-centered framework is unlawful. *Id.* at 5, 22-23.

Petitioner seeks "release under reasonable conditions unless Respondents promptly establish lawful compliance" or "an expedited evidentiary hearing and lawful custody redetermination." *Id.* at 6. He also asks the Court to order Respondents to "produce the complete administrative and custody record" related to compliance with the ICWC PI Order and restored ICE guidance. *Id.* at 26.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Legal Framework for VAWA Petitions and ICE Guidance

The Violence Against Women Act of 1994, or VAWA, amended the Immigration and Nationality Act ("INA") and "created the VAWA self-petition, which provided that noncitizens with abusive qualifying family members can 'self-petition' for family-based

immigrant visas without their abuser's knowledge, consent, or participation." *ICWC*, 351 F.R.D. at 351 (citing 8 U.S.C. §§ 1101(a)(51), 1154(a)(1)(A)(iii), (B)(iii)).

After receiving a self-petition, USCIS determines whether the evidence submitted establishes a prima facie case for VAWA relief. *See* USCIS Policy Manual, vol. 3, pt. D, ch. 5.A.1., https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5. If USCIS concludes the self-petitioner has addressed VAWA's eligibility requirements, it issues a Notice of Prima Facie Case. *See id.* The Notice "does not confer immigration status or a benefit," and it "is not a determination that the self-petitioner established eligibility or that the self-petitioner has met his or her burden of proof." *Id.* However, self-petitioners who establish a prima facie case are eligible for certain public benefits "such as welfare, health, disability, or unemployment and similar benefits while their petitions are pending." *ICWC*, 351 F.R.D. at 351 (citing 8 U.S.C. §§ 1611(a), 1641(c)).

Under its 2011 policy, ICE would generally refrain from initiating removal proceedings against known victims of a crime, and exercising favorable discretion—such as release and deferral or a stay of removal—would generally be appropriate. *Id.* at 353. ICE's 2021 Directive echoed these policy choices and added that ICE would typically request expedited adjudications of victim-based benefit petitions from USCIS and would consider a person's eligibility for victim-based benefits a positive discretionary factor. *Id.*

In 2025, however, ICE rescinded its 2021 Directive and eliminated the presumption of protection from immigration enforcement for these petitioners and replaced it with a presumption of enforcement, subject to narrow limitations (the "2025 Guidance"). *Id.* at 354. The 2025 Guidance also allegedly refused to honor USCIS grants of deferred action

to noncitizens with pending petitions and instead effectively revoked those grants by pursuing immigration enforcement actions against them. *Id.* Specifically,

> [T]he 2025 Guidance establishes that the following policies govern ICE officers' enforcement actions towards individuals with pending victim-based benefit petitions: officers should (1) "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised"; (2) "consult with" local ICE attorneys only "to ensure any such [civil enforcement] action is consistent with applicable legal limitations"; (3) need not consider a noncitizen being "a victim of a crime" as "a positive discretionary factor"; and (4) will not "routinely request expedited adjudications from USCIS," but may do so on a case-by-case basis when "it is in ICE's best interests."

*Id.* (internal citations omitted).

In *ICWC*, the Central District of California court preliminarily enjoined the 2025 Guidance. The 2025 Guidance was significant because it:

> expressly repealed previous policy and dramatically changed ICE's enforcement posture towards individuals with pending petitions for victim-based immigration benefits from a policy of refraining from immigration enforcement against such persons in deference to their pending applications, to a policy of enforcement despite their pending applications. The victim-based immigration benefits in issue are VAWA self-petitions, U visas, and T visas.

*Id.* at 348. The 2025 Guidance "rescinded and superseded" ICE Directive 11005.3, "Using A Victim-Centered Approach with Noncitizen Crime Victims" (Dec. 2, 2021) ("2021 Directive") and ICE Policy Statement "Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs" (Jun. 17, 2011) ("2011 Policy"). *Id.* at 350, 353-355. The Central District of California court ultimately enjoined the enforcement of the 2025 Guidance, which implicitly reinstated the 2021 Directive and 2011 Policy. *Id.* at 397

("Pursuant to 5 U.S.C. § 705, the Court hereby STAYS the 2025 Guidance, including its rescission of prior policies.").

The *ICWC* court applied the stay "in favor of All Individual Plaintiffs, the current and future clients of the Organizational Plaintiffs, and the members of all three Classes." *Id.* These classes include:

> (1) "Pending Petition Class: All individuals with pending principal or derivative U visa petitions, T visa petitions, or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement."
>
> (2) "Deferred Action Class: All individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status."
>
> (3) "Stay of Removal Class: All individuals with a pending U or T visa petition who, since January 30, 2025, have been, are, or will be detained by ICE and who request or requested a stay of final removal order prior to enforcement of that removal order."

*Id.* at 396. Accordingly, the reinstated 2021 Directive and 2011 Policy only apply to members among these classes. *Id.* at 396-397. However, these policies did not immediately guarantee a class member's release from detention; a qualifying class member may still be detained for "serious adverse factors," such as national security concerns or a serious criminal history. *Id.* at 353.

## V. <u>Analysis</u>

### A. Section 1226(a) applies to Petitioner's detention.

Respondents assert Petitioner is detained under § 1226(a). Resp. at 2. He does not dispute that assertion. Section 1226(a) generally authorizes detention of a noncitizen

pending removal proceedings and entitles the noncitizen to a bond hearing before an immigration judge. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

The Tenth Circuit recently confirmed § 1226(a) applies to govern detention of noncitizens like Petitioner. *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1235-49 (10th Cir. 2026). In *Santillan Quiroz*, the Tenth Circuit concluded "those who entered the United States without admission and who have lived here since are categorically unable to seek admission while they remain in the country." *Id.* at 1239 (citation modified). Accordingly, "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond)." *Id.* at 1237. Therefore, based on Respondents' acknowledgment that § 1226(a) applies, Tenth Circuit precedent, and this Court's prior holding in *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025), the Court should find § 1226(a) governs Petitioner's detention.

### B. Petitioner's Membership in the ICWC PI Order Pending Petition Class Does Not Entitle Him to Any Relief.

Petitioner alleges he falls within the Pending Petition class because his VAWA petition was pending when ICE detained him. Pet. at 18-20.[4] He further alleges ICE should

[4] Respondents assert Petitioner was not subject to an unexpired prima facie determination at the time of his arrest in May 2026, meaning it is "unclear whether Petitioner currently qualifies as a class member under *ICWC*" Resp. at 9. On September 18, 2026, Petitioner submitted a prima facie determination with an expiration date of March 8, 2027. Doc. 10

have considered his pending VAWA petition and positive prima facie determination before detaining him, making his detention unlawful. *Id*. at 18-21.

As an initial matter, there are substantial questions about what effect, if any, *ICWC*'s injunction has on this Court. *See Guillermo B. R. v. Blanche*, No. 26-CV-3599, 2026 WL 2665614, at *3 (D. Minn. Sep. 10, 2026) (noting "substantial questions" about what effect ICWC has on the court); *Jose Alberto C. D. v. Blanche*, No. 26-CV-3566, 2026 WL 2588362, at *4 (D. Minn. Sep. 2, 2026) (noting "this Court has serious reservations about whether the ruling in *ICWC* actually applies to anyone beyond the named plaintiffs in that case") *F.J.V.R. v. Moniz*, No. 26-CV-12525, 2026 WL 1751998, at *3 (D. Mass. June 18, 2026) ("It is not clear what effect, if any, that non-final order has in this proceeding, and whether this Court has the authority to enforce it.").

Magistrate Judges in this District have recently concluded the *ICWC* injunction does not entitle a petitioner to relief before this Court. *See, e.g.*, *Onate v. Gantt*, No. CIV-26-1403-SLP, 2026 WL 3006706, at *5 (W.D. Okla. Oct. 6, 2026) (R&R), *adopted*, 2026 WL 3089264, at *1 (W.D. Okla. Oct. 15, 2026); *see also Kumstis v. Figueroa*, No. CIV-26-1724-G, 2026 WL 3169681, at *5 (W.D. Okla. Oct. 22, 2026) (R&R); *Lozano v. Warden, Diamondback Corr. Facility*, No. CIV-26-1806-HE, 2026 WL 3136227, at *2 (W.D. Okla. Oct. 20, 2026) (R&R); *Talbot v. Warden of Diamondback Corr. Facility*, No. CIV-26-1741-D, 2026 WL 2943108, at *3-4 (W.D. Okla. Sep. 30, 2026) (R&R).

---

at 5. However, the *ICWC* court's Pending Petition class applies to pending VAWA petitions and does not account for any expired or unexpired prima facie determinations. *See ICWC*, 351 F.R.D. at 396.

Similarly, most district courts have expressly found *ICWC* does not apply outside the Central District of California, often concluding the injunction is still in its preliminary stages and an appeal is pending, meaning that the injunction is not yet final and does not hold nationwide or preclusive affect. *See, e.g.*, *Guillermo B. R.*, 2026 WL 2665614, at *3; *Rodrigues v. Lynch*, No. 1:26-CV-2319, 2026 WL 2520313, at *2 n.3 (W.D. Mich. Aug. 26, 2026) ("Under these circumstances, at this time, this non-binding case does not present a basis for relief in this habeas action."); *Portillo Garcia v. Mullin*, No. CV H-26-2481, 2026 WL 2323547, at *1 n.11 (S.D. Tex. Aug. 11, 2026) ("However, that matter remams [sic] pending in another district court and is presently in a prelimmary [sic] posture. The [c]ourt is not persuaded that the existence of a non-final order entered in separate litigation independently establishes Petitioner's entitlement to habeas relief."); *Prado Orozco v. Raycraft*, No. 2:26-CV-11985, 2026 WL 2138181, at *7 (E.D. Mich. July 24, 2026) ("*ICWC*'s persuasiveness is highly limited by the fact that it is in a non-final, preliminary injunction posture currently on appeal from a different district that is not even within this Circuit."); *Ore-Falcon v. Wofford*, No. 26-CV-00181, 2026 WL 1871024, at *3 n.1 (E.D. Cal. June 29, 2026) ("The decision of another judge in a different district is not binding upon this court any more than that court is bound by the decisions of this court."); *Rauda Choto v. Ladwig*, No. CV 26-0322, 2026 WL 1652576, at *1 (W.D. La. June 8, 2026) ("However, that matter remains pending in another district court and is presently in a preliminary posture. The Court is not persuaded that the existence of a non-final order entered in separate litigation independently establishes Petitioner's entitlement to emergency injunctive relief in this proceeding."); *Almanza v. Oddo*, No. 26-CV-720, 2026

WL 1506283, at *6 n.5 (W.D. Pa. May 29, 2026) (noting that the preliminary injunction issued in the California class action is not binding); *J.R.S.B. v. Olson*, No. 26-CV-478, 2026 WL 1481267, at *4 n.5 (N.D. Ind. May 27, 2026) (observing that a petitioner remains free to seek relief as a purported class member in the California action, but another court's non-final order is not subject to preclusive effect in a separate proceeding).

Other district courts have come to a different conclusion. *See*, *e.g.*, *Escobar Ramirez v. Mullin*, No. 26-3278, 2026 WL 2619875, at *2 (D. Kan. Sep. 4, 2026) (finding the government "violated the 2021 Directive, which now governs enforcement activities with respect to certain noncitizens"); *Villeda Mejia v. Baltazar*, No. 26-CV-02084, 2026 WL 2224656, at *2 (D. Colo. Aug. 3, 2026) (concluding a T-visa applicant "Petitioner falls within [the ICWC PI Order] class, is protected from removal, and must be released"); *Munoz Leal v. Bondi*, No. 25-CV-06072, 2026 WL 1847745, at *1 (S.D. Tex. June 26, 2026) (noting respondents "do not contest that Petitioner is a member of the nationwide class action"); *Gonzalez v. Wesling*, No. 26-CV-231, 2026 WL 1765871, at *9 (D.R.I. June 19, 2026) (finding petitioner "clearly belongs" to both the Pending Petition Class and the Stay of Removal Class); *Perdomo Reynaud v. Lyons*, No. 26-CV-05905, 2026 WL 1674229, at *5 n.4 (D.N.J. June 10, 2026) (recognizing petitioner's membership in the ICWC PI Order class).

But even if *ICWC* had effect here, the ICWC PI Order would not entitle Petitioner to release. "A pending VAWA application does not, standing alone, confer lawful immigration status or create a statutory entitlement to release from custody. Petitioner has not identified a statute or binding regulation that prohibited Respondents from detaining

him while his application remained pending." *Prado Orozco*, 2026 WL 2138181, at *7 (citation modified); *see also Flores v. Blanche*, No. 26-5446, 2026 WL 2069995, at *2 (D.N.J. July 17, 2026) (holding in the context of pending U-visa applications, a pending application "does not, standing alone, confer lawful immigration status, prevent enforcement of a final order of removal, or create a statutory entitlement to release from custody"). ICE's internal policy "does not, without more, create a judicially enforceable right to release or restrict an agency's statutory authority to detain an individual subject to a final order of removal." *Flores*, 2026 WL 2069995, at *2 (denying petitioner's APA and *Accardi* doctrine claims based on purported membership in the ICWC PI Order class).

Further, even under ICE's prior policies, Petitioner would have only been subject to ICE's discretionary "deferred action" not to initiate removal proceedings.[5] *See Eliseo C. v. Blanche*, No. 26-CV-2282, 2026 WL 2683449, at *7 (D. Minn. June 29, 2026) (noting "the 2011 and 2021 ICE policies themselves state that they provide guidance regarding ICE's position with respect to its exercise of 'prosecutorial discretion'"). Deferred action is ordinarily understood to be an act of "prosecutorial discretion," and "DHS has sole authority to exercise prosecutorial discretion in immigration cases." *Rauda-Castillo v.*

[5] Here, though, the undersigned concludes Petitioner has not sufficiently alleged he was in active deferred action status where he has alleged a pending VAWA petition with a *prima facie determination* but has not alleged ICE granted any *deferred action* to initiate removal proceedings based on the pending petition. *See* Doc. 10 (extending Petitioner's prima facie determination until March 2027). According to the USCIS Policy Manual, deferred action can be granted for VAWA petitioners after the VAWA petition has been approved. *See* USCIS Policy Manual, vol. 3, pt. D, ch. 5.D.2, https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5#footnotelink-43.

*Lynch*, 616 F. App'x 385, 388 (10th Cir. 2015); *see Jose Alberto C. D.*, 2026 WL 2588362, at *7 ("In sum, because his deferred action is ultimately a matter of prosecutorial discretion, [petitioner] has failed to show that he is entitled to a writ of habeas corpus, and the Court denies his habeas petition on this basis."). Accordingly, Petitioner has not shown that his custody is unlawful under the statute in a manner that would entitle him to habeas relief.

### C. Section 1226(a) and Due Process

Nor does *ICWC* help Petitioner's claim that his detention—while a VAWA petition is pending—violates his constitutional right to due process. The *ICWC* case, where relevant to Petitioner's claims here, had nothing to do with due process. *Prado Orozco*, 2026 WL 2138181, at *8, *9 n.6 (holding *ICWC* "had nothing to do with due process" and his VAWA prima facie determination did not "provide any conceivable basis for a due process violation"). Thus, to the extent Petitioner relies on *ICWC* for his VAWA-related due process claim, his reliance is misplaced.

Because Petitioner is not entitled to relief based on his membership in the ICWC PI Class, he is limited to relief based on application of § 1226(a) and its associated due process. A bond hearing is typically the proper remedy for a noncitizen detained under § 1226(a). *See Santillan Quiroz,* 180 F.4th at 1251 n.13; *see also Bohorquez Bravo v. Lyons*, No. CIV-26-912-R, 2026 WL 1896141, at *1 (W.D. Okla. July 1, 2026) (citing *Santillan Quiroz* and concluding "the appropriate remedy is a bond hearing"). Further, because § 1226(a) applies to Petitioner's detention, he is owed the due process provided to him under the statute. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before

an [Immigration Judge]." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025). *See also Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026) ("An individualized custody redetermination hearing [under § 1226(a)] would provide Petitioner with the process he is due under the statute."). Based on Tenth Circuit precedent and this Court's reasoning in *Valdez*, 2025 WL 3709021, at *3, the Court could apply § 1226(a) and grant Petitioner a bond hearing without separate analysis of his due process claims.

**D. The most Petitioner is entitled to is a bond hearing, but such a hearing already occurred.**

Consistent with this Court's approach in previous cases, the undersigned would typically recommend Petitioner be afforded a constitutionally sufficient individualized bond hearing pursuant to § 1226(a). *See Karimov* 2026 WL 950130, at *1 ("As a remedy, Petitioner requests his immediate release, but the Court concludes that a bond or custody redetermination hearing is the appropriate remedy." (citing *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))). As this Court has acknowledged, "Petitioner is entitled to the custody procedures provided by [§ 1226(a)]," and "the statute provides the Department of Homeland Security the discretion to either detain a noncitizen or release the noncitizen on bond." *Id.* (citation modified). As such, "an individualized custody redetermination hearing would provide Petitioner with the process he is due under the statute." *Id.* (citation modified).

However, Petitioner has already received a bond hearing, and this Court cannot review the discretionary determination of the IJ. The determination of bond under

§ 1226(a) is within the purview of the IJ, who considers whether a noncitizen is a flight risk or a danger to the community. 8 C.F.R. § 236.1(c). Section 1226(e) "strips federal courts of jurisdiction to hear challenges to an IJ's discretionary decision to keep a noncitizen in detention." *Nucamendiz v. Hyde*, No. 25-CV-13851, 2026 WL 221449, at *1 (D. Mass. Jan. 28, 2026) (citation modified); *see also Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) (citing § 1226(e) and noting "the Attorney General's exercise of discretion is not subject to judicial review"). "Thus, a district court has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or deny bond." *Kumar v. De Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026); *see also Perez v. Holt,* No. CIV-25-1151-SLP, 2026 WL 597126, at *6 (W.D. Okla. Mar. 3, 2026) ("Thus, the Court finds that the IJ relied on evidence in the record to make a discretionary decision to deny Petitioner bond; therefore, this Court lacks subject matter jurisdiction to review that decision."). Nor does Petitioner ask the Court to review his bond hearing. *See* Pet. at 17 ("Mr. Allen does not ask this Court to review the discretionary merits of that ruling."). Thus, the undersigned concludes there is no relief the Court can grant to Petitioner.

## VI. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends that the Court **DENY** the Petition, Doc. 1, for habeas relief. The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **November 13, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than

**November 20, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 29th day of October, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE